Filed 11/22/13  P. v. Crawford CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MELVIN JOEL CRAWFORD,<br><br>Defendant and Appellant. | F064665<br><br>(Super. Ct. No. 11CM1990)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kings County.  Donna Tarter, Judge.

Robert L.S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General,  Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and Caely E. Fallini, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury convicted Melvin Joel Crawford of failing to register or reregister as a transient sex offender within 30 days of his last registration based upon prior felony

convictions of Penal Code sections 261, subdivision (a)(2) and 289, subdivision (a)(1).[1] (§ 290.011, subd. (a).)  The jury also found true allegations that Crawford previously had been convicted of two prior felony convictions within the meaning of the Three Strikes Law, sections 1170.12, subdivisions (a)-(d), and 667, subdivisions (b)-(i).  In a bifurcated court trial, the court found Crawford had served three separate prior prison terms following felony convictions in 1991, 1998 and 2006.  (§ 667.5, subd. (b).)  At sentencing, the court denied Crawford's request to dismiss one of his strike priors and sentenced him to 28 years to life in prison comprised of 25 years to life for the substantive offense and one consecutive year for each of his three prison priors.

On appeal, Crawford contends: (1) the trial court erred in failing to instruct the jury, sua sponte, on the defense of mistake of fact; (2) the trial court abused its discretion when it declined to dismiss one of the strike priors; (3) his sentence constitutes cruel and unusual punishment under the state and federal constitutions; and (4) the trial court imposed an unauthorized sentence by limiting conduct credits to 50 percent of his presentence confinement time.  Finding no merit to Crawford's contentions, we affirm.

## FACTS

Crawford was released from state prison to parole on October 21, 2010.  On October 28, 2010, Hanford Police Department Officer Brian Toppan registered Crawford as a transient sex offender.  Toppan ensured Crawford read and initialed an advisement that states: he has no residence address; he must register in the jurisdiction where he is physically present as a transient within five working days of "becoming one"; thereafter, he must update his information no less than once every 30 days with the law enforcement agency having jurisdiction over the place where he is physically present as a transient; and he did not need to report changes of transient location within the 30 day period unless he moved out of state.  Toppan saw Crawford sign the registration form.

---

[1] Undesignated statutory references are to the Penal Code.

2.

Hanford Police Department Investigator Darren Matteson was in charge of sex offender registration for the Hanford Police Department from 2003 through September 2011. He had access to the Department of Justice databases that enabled him to determine when and where a sex offender registered. During a routine check of registrants on January 12, 2011, Matteson became aware that Crawford had not reregistered 30 days after October 28, 2010. He called Crawford's parole agent, Larry Cassina, to see if Crawford had been taken into custody before the expiration of the 30 day period. Cassina said Crawford was arrested on December 13, 2010, more than 30 days after October 28. After checking the Department of Justice databases and calling the Kings County Sheriff's Department, Matteson determined Crawford had not registered as a transient sex offender within 30 days of October 28, 2010.

Larry Cassina supervised Crawford on parole between October 28, 2010 and December 2010. During that time, Crawford was a transient in Kings County, primarily in Hanford, and wore a GPS tracker. Cassina knew Crawford had to register as a sex offender. Cassina kept in regular contact with Crawford and was aware he sometimes slept behind the parole office. As a transient, Crawford stayed in multiple locations. When Crawford was arrested on December 13, 2010, he indicated to Cassina he had not updated his registration.

Cassina informs his parolees of the following with respect to sex offender registration: "When they're – when they initially are released from custody each time they're required to report to the office and we go over some of the basics. If it is a fresh case, we go over all of the basics usually, and then as it is a rerelease we just sort of touch on anything that is new. Specific to registration, on that first visit we talk about the requirement to register and we instruct them to do that, and once they have registered they bring in or we tell them to bring in a copy of their registration receipt for our records, and then as they register or reregister with updates and, for example, we'll often ask them to provide a copy, you know, once they have done that registration update."

3.

*Defense*

Crawford testified in his own defense. Crawford said he was paroled on October 28, 2010, and came to Kings County. He knew he had to register as a sex offender because his parole agent, Cassina, told him. Crawford was homeless; he lived on the streets or in motels if his family gave him money. If he could not find a place to stay, he would stay behind the parole office. Crawford had a cell phone, which he used to call Cassina every day.

When asked why he did not register again after October 28, 2010, Crawford responded: "Well, my mom was dying from cancer[.] I know it was not an excuse, but I was stressed and I told Mr. Cassina on the phone, he told me take care of it, but before then he arrested me for the same matter so I did ten months in prison for this." Crawford claimed that between October and December 2010, he tried to register at the Hanford Police Department but was told that since he "was staying out there at the motel" he needed to "check in" with the sheriff's department because "it was out of their jurisdiction." Crawford said he went to the sheriff's department in November 2010, filled out paperwork and had his picture taken. He thought he had registered. He did not know the date he registered or the name of the person who registered him, but he knew it was a Tuesday and the person was a young brunette female.

When defense counsel asked Crawford if the paperwork at the sheriff's department was the same paperwork he filled out at the Hanford Police Department when he was paroled, Crawford answered, "No, it was just like she said, it was an update." When asked if he remembered what the paperwork said, Crawford responded "[b]asically the same thing, but she didn't tell me nothing about coming back in 30 days." Crawford said he did not know he had to return in 30 days to register until his parole agent told him on the day of his arrest. Although Crawford signed a document that said he had that responsibility as a transient, he "didn't read it, they just told me to initial" the boxes. Crawford had never been a transient before. When the prosecutor asked if he understood

4.

the form when he registered with the sheriff's department, Crawford responded, "I knew it was the same form, I assumed it was the same form."

Crawford admitted registering as a sex offender in 2003, 2004, and 2005. He testified the following about these forms: he initialed the requirements on the 2003 form, but did not read them because a lot of people were there and everyone was trying to get out; he read and initialed the 2004 form but he "thought it was different since I was a transient. There you have to register on your birthday once a year"; and he initialed and signed the 2005 form, which he "[p]robably" did not read. He was not a transient when he signed any of these forms. When the prosecutor asked Crawford to read aloud from one of the forms he signed, Crawford responded, "My reading is not that good, I cannot read." He also testified he had a problem reading and, when asked if he could read a little, he responded, "Enough, but not to really understand, and plus I need glasses, this is – the words are too small."

After the prosecutor pointed out that Crawford signed his name on the 2005 registration form next to a paragraph that said it was signed under penalty of perjury and he understood the failure to comply with registration requirements was punished as a criminal offense, Crawford responded, "I couldn't read that. I have a third grade education, and it would have been better if they went over it with me or asked me to read it out loud and they would have knew [*sic*] that I couldn't read." He never asked anyone to explain the registration forms to him. When asked if he relied exclusively on what his parole agent told him, Crawford answered, "Yeah, that is his job, he is supposed to inform me the right information." Crawford did not blame Cassina, though, as he should have told Cassina he could not read. Crawford denied telling Cassina on the day of his arrest that he had not registered. He admitted having convictions in 1991 for forcible rape and penetration with a foreign object.

**DISCUSSION**

*Failure to Instruct on Mistake of Fact*

Crawford contends the trial court had a sua sponte duty to instruct the jury on the defense of mistake-of-fact pursuant to CALCRIM No. 3406.[2] He contends this duty arose based on his testimony, as summarized by appellate counsel, that "he thought that when he signed the paperwork in November at the sheriff's station and submitted to a photograph, he was timely registering as a sex offender within the 30 day time constraint required by law." Crawford asserts: "Had those circumstances been true, [Crawford] would have been in compliance with the law. Therefore, [Crawford] was asserting a mistake of fact defense and claiming that he did not intentionally fail to register." On this basis, Crawford maintains the trial court was obligated to instruct the jury on mistake of fact.

In California criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. The

[2] CALCRIM No. 3406, on mistake of fact, reads as follows:

"The defendant is not guilty of _____ <insert crime[s]> if (he/she) did not have the intent or mental state required to commit the crime because (he/she) [reasonably] did not know a fact or [reasonably and] mistakenly believed a fact.

"If the defendant's conduct would have been lawful under the facts as (he/she) [reasonably] believed them to be, (he/she) did not commit _____ < insert crime[s]>.

"If you find that the defendant believed that _____ <insert alleged mistaken facts> [and if you find that belief was reasonable], (he/she) did not have the specific intent or mental state required for _____ < insert crime[s]>.

"If you have a reasonable doubt about whether the defendant had the specific intent or mental state required for _____ <insert crime[s]>, you must find (him/her) not guilty of (that crime/those crimes)."

6.

general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.  (*People v. Sedeno* (1974) 10 Cal.3d 703, 715, overruled on other grounds in *People v. Breverman* (1998) 19 Cal.4th 142, 149 (*Breverman*).)  The trial court's sua sponte instructional obligation includes the obligation to instruct the jury with a specific defense if there is substantial evidence supporting the defense, unless the defense is  inconsistent with the defendant's theory of the case.  (*People v. Salas* (2006) 37 Cal.4th 967, 982 (*Salas*);  *Breverman*, *supra*, 19 Cal.4th at p. 157.)[3]

There is no obligation to instruct a jury with a defense if the evidence supporting it is minimal or insubstantial. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1145.)  Any doubt as to the sufficiency of the evidence should be resolved in the defendant's favor. (*Ibid.*)  ". . . [T]he test is not whether *any* evidence is presented, no matter how weak. Instead, the jury must be instructed when there is evidence that 'deserve[s] consideration by the jury, i.e., "evidence from which a jury composed of reasonable [people] could have concluded"' that the specific facts supporting the instruction existed."  (*People v. Petznick* (2003) 114 Cal.App.4th 663, 677.)  We do not determine the credibility of the evidence; instead, we merely decide whether there was evidence which, if credited by the jury, was sufficient to raise a reasonable doubt.  (*Salas, supra,* 37 Cal.4th at p. 982.)

A mistake of fact occurs where a person understands the facts to be other than they really are.  (*People v. LaMarr* (1942) 20 Cal.2d 705, 710.)  An honest and reasonable

---

[3] We assume for purposes of this decision that a trial court has a sua sponte duty to instruct on a mistake of fact defense, notwithstanding our Supreme Court's decision in *People v. Anderson* (2010) 51 Cal.4th 989 (*Anderson*) and the application of *Anderson* to a mistake of fact defense in *People v. Lawson* (2013) 215 Cal.App.4th 108, 119 ("[A]s explained in *Anderson,* the trial court's sua sponte instructional duties do not apply to defenses that serve only to negate the mental state element of the charged offense when the jury is properly instructed on the mental state element, even when substantial evidence supports the defense and it is consistent with the defendant's theory of the case.")

belief in the existence of circumstances which, if true, would make the charged act an innocent one, was a good defense at common law. In California, a person who commits an act or makes an omission under a mistake of fact that disproves his or her criminal intent, is excluded from those persons who are capable of committing crimes. (§ 26, par. Three; *People v. Russell* (2006) 144 Cal.App.4th 1415, 1424-1425 (*Russell*).) Expressed another way, people do not act unlawfully if they commit acts based on a reasonable and honest belief that certain facts and circumstances exist which, if true, would render the act lawful. (*People v. Reed* (1996) 53 Cal.App.4th 389, 396.)

A convicted sex offender who does not have a residence must register where he is located as a transient. (§ 290.011, subd. (a).) Here, Crawford first registered at the Hanford Police Department as a transient on October 28, 2010. Pursuant to section 290.011, subdivision (a), Crawford was required to reregister on or before the 30th day after his initial registration and once every 30 days thereafter. The statute required him to reregister with either (1) the chief of police of the city in which he was physically present within that 30 day period, or (2) the county sheriff, if he was physically present in an unincorporated area or city with no police department. (§ 290.011, subd. (a).) He was required to reregister regardless of the length of time he had been physically present in the particular jurisdiction in which he reregistered. (*Ibid.*) A transient who fails to reregister within any 30-day period may be prosecuted in any jurisdiction in which he or she is physically present. (*Ibid.*)

Whether registering or reregistering, a transient must: provide a signed, written statement giving current information as required on the Department of Justice registration forms; list the places he or she sleeps, eats, works, frequents, and engages in leisure activities; provide his or her employer's name and address; provide fingerprints and a current photograph taken by the registering official; and provide the license plate number of any vehicle owned by, regularly driven by, or registered in the person's name. (§§ 290.011, subds. (c) & (d), 290.015, subd. (a)(1), (2) & (3).)

Crawford contends he was entitled to a mistake-of-fact instruction because his belief that he validly reregistered as required by law when he purportedly filled out paperwork at the sheriff's department meant that he did not have the requisite intent to commit the offense and therefore was not culpable. Crawford apparently is contending that his "mistake" was believing that whatever he filled out at the sheriff's department was a valid registration, when it was not. He asserts this was a mistake of fact because, if the registration were valid, he would have been in compliance with the law.

The failure to properly reregister, however, is a mistake of law, not one of fact. A mistake of fact would exist if, for example, Crawford honestly, but mistakenly believed he was staying outside the city of Hanford, thereby requiring him to register at the sheriff's department instead of the Hanford Police Department. Instead, Crawford's mistake was his belief that he complied with the law by filling out the forms required to reregister, which is a mistake of law. (See *People v. Mayer* (2003) 108 Cal.App.4th 403, 412 [city council member's belief that residency requirement did not require him to sleep or live in the city to call it his residence was mistake of law]; *People v. Young* (2001) 92 Cal.App.4th 229, 233 [erroneous belief that Compassionate Use Act of 1996 permitted transportation of marijuana as medicine was mistake of law that did not excuse the general intent crime of transporting drugs].) As a mistake of law, an instruction on mistake of fact was inapplicable.

Moreover, there was not substantial evidence of mistake to require the trial court to give the instruction sua sponte. Crawford testified he thought he registered at the sheriff's department when he filled out paperwork and had his picture taken. He testified the paperwork said "[b]asically the same thing" as the paperwork he filled out at the Hanford Police Department. Crawford did not testify that he did not fill out the required forms while at the sheriff's department. Instead, his testimony was that he went to the Hanford Police Department to register, he was told to register at the sheriff's department, and he went to the sheriff's department and filled out paperwork to register. If the jury

9.

believed him, it could have acquitted him based on instructions given, as it would have found Crawford's failure to register as a sex offender with the police chief of Hanford was not willful since he attempted to register there, but was told to register at the sheriff's department, where he did register.[4] A mistake was not implicated by his testimony. Under these circumstances, we cannot say there was substantial evidence to support the defense.

### The Romero[5] Motion

Crawford contends the trial court abused its discretion in denying his motion to strike one of his two prior felony convictions. We disagree for the reasons set forth below.

The probation officer recommended that Crawford, who was then 45 years old, be denied probation and sentenced to prison for a term deemed appropriate by the court. The probation officer stated in her report that the court could impose a Three Strikes sentence of 25 years to life based on his prior felony convictions, plus a consecutive three years for his three prison priors. His criminal history contained in the probation report consists of: (1) 1991 felony convictions for rape by force (§ 261.2) and sexual penetration with a foreign object with force (§ 289, subd. (a)), which resulted in a six years' suspended prison sentence and three years' probation, imposed on October 1, 1991; (2) in

---

[4] The jury was instructed with CALCRIM No. 1170 as follows: "The defendant is charged with failing to register as a sex offender in violation of Penal Code section 290.011(a). [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant was previously convicted of violation[s] of Penal Code section[s] 261(a)(2) and 289(a)(1). [¶] 2. The defendant resided [in] Hanford, California as a transient. [¶] 3. The defendant actually knew he had a duty under Penal Code section 290 to register as a sex offender at least once every 30 days so long as he was a transient. [¶] AND [¶] 4. The defendant willfully failed to register as a sex offender with the police chief of that city at least once every 30 days. [¶] Someone commits an act willfully when he or she does it willingly or on purpose."

[5] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

September 1992, he was arrested for misdemeanor driving under the influence (Veh. Code, § 23152, subd. (a)), and sentenced that same month to three years' court probation, a fine and jail; (3) in November 1992, his probation was revoked in the 1991 case and he was sent to prison for six years; (4) in June 1995, he was paroled; (5) in March 1996, he was arrested for driving under the influence with injury (Veh. Code, § 23153, subd. (a)), which was charged as a misdemeanor pursuant to section 17, subdivision (b)(4); (6) at his September 1996 sentencing, probation was denied, he received a jail sentence, and he returned to custody; (7) in July 1997, he was paroled; (8) in December 1997, he was arrested for failing to register as a sexual offender, a felony, and in February 1998, he was sentenced to six years in prison; (9) in February 2003, he was paroled; (10) in May 2004, he was arrested for misdemeanor driving under the influence (Veh. Code, § 23152, subd. (b)), and was returned to custody; (11) in September 2004, he was sentenced to three years court probation, a fine and jail; (12) in November 2004, he was paroled; (13) in December 2005, he was arrested for failing to register as a sexual offender; (14) in April 2006, he was sentenced to six years in prison; (15) on October 21, 2010, he was paroled; and (16) on December 15, 2010, he returned to custody after being arrested in the present case for failing to register and reregister as a transient sexual offender within 30 days.

Crawford told the probation officer in an interview that "I was a transient, my mom passed away, but I did register but they said they had no record." Crawford also stated the case that resulted in his 1991 convictions had haunted him all of his life; the victim was his girlfriend and he was originally granted probation before violating his terms and conditions.[6] Crawford also stated he received a high school diploma in 1984, he was last employed in 1988 for three years and, prior to his arrest, he was in the process

---

[6] Other than this statement by Crawford, the probation report does not state the facts of Crawford's 1991 convictions.

of applying for social security benefits. In 2004, he was diagnosed with kidney problems, and in 2006, he was diagnosed with high blood pressure, for which he was taking an unknown prescription medication. Crawford further stated he was diagnosed with paranoid schizophrenia in 2003, but had never taken medication for it.

At sentencing, Crawford's counsel asked the trial court to consider striking one of his prior strike convictions. He pointed out that Crawford's 1991 convictions for violating sections 261, subdivision (a)(2) and 289, arose out of the same case and involved the same operative set of facts, the same victim and the same behavior at the same time. Counsel argued that while Crawford had technically violated the section 290 registration requirements, he satisfied the spirit of the law by keeping in constant communication with his parole agent and, because he was wearing a GPS monitor on his leg, he was never in danger of being lost or forgotten by the system. Counsel further argued that Crawford had lost his mother during that time and Crawford's health was poor, as he had cancer and had suffered a stroke, and asked the court to show "a little bit of mercy in interpreting the requirements under the law."

The prosecutor opposed the request and asked the trial court to impose the full Three Strikes sentence. The prosecutor asserted that while the two strikes may have come out of the same offense, there were two separate and distinct sexual penetrations by force. The prosecutor argued that Crawford had continued to live a "life of criminality," as he had repeatedly failed to register as a sex offender and continued to shirk his responsibility to register. The prosecutor pointed out Crawford made numerous excuses at trial for failing to register and, even at sentencing, showed no remorse because he continued to provide excuses for failing to comply with the law.

The trial court denied the motion. The court recognized it had discretion to strike a strike. The court explained that it had reviewed Crawford's prior record extensively, which showed: he was convicted in 1991 of rape by force and sexual penetration with a foreign object, which the court viewed as separate crimes and occurrences; while

Crawford was originally granted probation, he was arrested in 1992 for driving under the influence and sent to prison; after his release, he was charged with a felony DUI with injury, which was reduced to a misdemeanor; at that point, the court assumed Crawford was on notice that any felony would result in a life term and was given a break; he was sent to prison once again, and when he was released, he committed another offense, failing to register as a sex offender, and returned to prison; the court assumed at that point he was put on notice that failing to register is a 25-to-life crime; on his release, he violated the law by committing another DUI and was sent back to prison; after his release from prison in 2005, he failed to register, was put on notice that it was a 25-to-life term, and was given a break; and, after his release, he once again failed to register in this case.

The court noted that 20 years had elapsed from the 1991 offenses to the February 2012 sentencing hearing and Crawford had managed to stay out of custody only three of those 20 years. The court saw no basis to give Crawford "a break at this time, because you continue to be on notice of the severe consequences and the severe gravity of your actions, and continue not to comply." The court denied the request to strike a strike.

A criminal defendant's request that a court strike one or more strike convictions pursuant to section 1385 is commonly called a *Romero* motion.[7] That statute provides, in relevant part: "The judge or magistrate may ... in furtherance of justice, order an action to be dismissed." (§ 1385, subd. (a).) In *Romero,* the California Supreme Court concluded that section 1385, subdivision (a) "permit[s] a court acting on its own motion to strike prior felony conviction allegations in cases brought under the Three Strikes law."

---

[7] A criminal defendant has no right to move to strike a prior felony conviction pursuant to section 1385. (*People v. Hernandez* (2000) 22 Cal.4th 512, 522.) Rather, a defendant may only ask the trial court to exercise its discretion under section 1385. Nevertheless, requests of this kind are commonly made in the conventional form of a motion pursuant to *Romero.* (*People v. Gillispie* (1997) 60 Cal.App.4th 429, 432-433, fn. 1.)

(*Romero, supra* at pp. 529-530.) And although "[a] defendant has no right to make a motion, and the trial court has no obligation to make a ruling, under section 1385," a defendant "[has] the right to 'invite the court to exercise its power by an application to strike a count or allegation of an accusatory pleading....'" (*People v. Carmony* (2004) 33 Cal.4th 367, 375 (*Carmony I*).)

In reviewing the denial of a *Romero* motion, the trial court's decision whether to strike a previous serious or violent felony is reviewed under a deferential abuse of discretion standard. (*Carmony I, supra,* 33 Cal.4th at p. 374.) We do not substitute our judgment for that of the trial court. (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.) "It is not enough to show that reasonable people might disagree about whether to strike one or more of [the defendant's] prior convictions." (*Ibid.*) A trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it. (*Carmony I, supra,* at p. 377.) "[A] trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss [citation]." (*Id.* at p. 378.)

In *People v. Williams* (1998) 17 Cal.4th 148 (*Williams*), our Supreme Court summarized the "deferential" standard of review of a *Romero* ruling for abuse of discretion as "whether the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts [citations]." (*Williams,* at p. 162.) On appeal, "'The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.'" (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977-978.)

14.

Here, the trial court properly exercised its discretion by examining permissible factors such as Crawford's prior convictions, current conviction, and his failure to comply with conditions of probation and parole. The court's decision to deny the *Romero* motion was neither irrational nor arbitrary considering Crawford's lengthy criminal history, difficulty in following the terms and conditions of probation and parole, and refusal to operate within the statutory parameters governing sex offender registration. Thus, Crawford is not a defendant who "'may be deemed outside the [Three Strikes law's] spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.'" (*Carmony I, supra,* 33 Cal.4th at p. 377.)

Crawford's reliance on *People v. Cluff* (2001) 87 Cal.App.4th 991 (*Cluff*) is misplaced. In *Cluff*, the appellate court remanded for a new *Romero* hearing because the trial court drew the factually unsupported conclusion that Cluff had obscured where he could be found, although he was living at his last registered address. (*Cluff, supra,* 87 Cal.App.4th at pp. 1001-1004.) Likening his case to *Cluff*, Crawford asserts his current offense is a mere technical violation because his failure to register did not demonstrate an attempt to evade authorities or obfuscate efforts to find him.

*Cluff* does not support the proposition that a mere technical nature of a violation of the registration laws brings a person outside the spirit of the Three Strikes law. In *Carmony I,* our Supreme Court upheld the denial of a *Romero* motion for a registrant whose current offense was failing to update a registration, but who had not changed his residence since his last registration. (*Carmony I, supra,* 33 Cal.4th at pp. 379–380.) There, the court emphasized the narrowness of *Cluff:* "Unlike the trial court in *Cluff,* which relied on a factor—the defendant's intentional obfuscation of his whereabouts— allegedly unsupported by the record, the trial court in this case refused to strike defendant's prior convictions based on factors allowed under the law and fully supported

15.

by the record." (*Carmony I, supra,* at p. 379.)  As the trial court here relied on permissible factors in denying Crawford's motion, *Cluff* does not assist Crawford.

Crawford essentially invites us to reweigh relevant factors, and contends the trial court should have given more weight to particular points.  But we may not reverse the denial of a *Romero* motion unless the decision was "so irrational or arbitrary that no reasonable person could agree with it."  (*Carmony I, supra,* 33 Cal.4th at p. 377.)  Given Crawford's record, we certainly cannot say the trial court erred in declining to find Crawford fell outside the spirit of the Three Strikes law.

*Cruel and Unusual Punishment*

Crawford contends his sentence of 25 years to life plus three years for failing to register constitutes cruel and unusual punishment under the federal and California Constitutions.  (U.S. Const, 8th Amend. [prohibits infliction of "cruel and unusual" punishment]; Cal. Const., art. 1, § 17 [prohibits infliction of "[c]ruel or unusual" punishment].)  The People assert Crawford has forfeited the issue on appeal for failure to raise it in the trial court and argues his sentence is neither cruel nor unusual.

Crawford asserted in his request to dismiss a strike that a life term should not be imposed, but never objected that such a sentence would constitute cruel and unusual punishment.  Accordingly, we agree with the People that Crawford forfeited this contention by not raising it in the trial court.  (*People v. Norman* (2003) 109 Cal.App.4th 221, 229.)  However, as Crawford asserts that any failure on trial counsel's part to object on this basis constitutes ineffective assistance of counsel, we will address the claim on its merits.  (*Id.* at p. 230.)

Generally, the Eighth Amendment prohibits only those sentences that are grossly disproportionate to the crime.  (*Ewing v. California* (2003) 538 U.S. 11, 23-24 (*Ewing*).)  In applying this principle, a court begins by comparing the gravity of the offense, which in the case of a Three Strikes sentence includes both the defendant's current crime and history of recidivism, with the severity of the sentence.  (*In re Coley* (2012) 55 Cal.4th

16.

524, 542 (*Coley*).) "'"In the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality" the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. [Citation.] If this comparative analysis "validate[s] an initial judgment that [the] sentence is grossly disproportionate," the sentence is cruel and unusual.'" (*Id.* at p. 542, citing *Graham v. Florida* (2010) 560 U.S. 48, ___, 130 S.Ct. 2011, 2022.)

The California Constitution is violated when the punishment "is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424, fn. omitted (*Lynch*).) The court in *Lynch* described three "techniques" courts have used to administer this rule: (1) an examination of "the nature of the offense and/or offender, with particular regard to the degree of danger both present to society" (*id.* at p. 425); (2) a comparison of the challenged penalty with the punishments prescribed for different, more serious, offenses in the same jurisdiction (*id.* at p. 426); and (3) "a comparison of the challenged penalty with the punishments prescribed for the same offense in other jurisdictions" (*id.* at p. 427, italics omitted). Punishment need not be shown to be disproportionate in all three respects in order to be ruled constitutionally excessive. (*People v. Dillon* (1983) 34 Cal.3d 441, 487, fn. 38 (*Dillon*).) Lengthy prison sentences imposed under a recidivist statute have long survived scrutiny under both state and federal constitutions. (See, e.g., *In re Rosencrantz* (1928) 205 Cal. 534, 539-540; *People v. Weaver* (1984) 161 Cal.App.3d 119, 125.)

Our Supreme Court has addressed whether a defendant's sentence of 25 years to life under the Three Strikes law for failing to update a sex offender registration violates the Eighth Amendment's prohibition against cruel and unusual punishment in *Coley*, *supra*, 55 Cal.4th 524. There, the defendant, who was required to register as a sex offender due to a 1998 conviction of aiding and abetting rape and who "had a lengthy and

very significant criminal history," failed to contact his parole officer upon his release from prison on parole and law enforcement had no record that he ever registered as a sex offender after his release. (*Coley*, *supra*, 55 Cal.4th at pp. 531, 532.) Seven months after his release, law enforcement officers conducting a parole sweep found the defendant living in an apartment with his girlfriend and her children. (*Id.* at pp. 532-533.) He was arrested and charged with failing to register as a sex offender upon arrival in a jurisdiction and failure to update his sex offender registration within five working days of his birthday. (*Id*. at p. 533.)

At trial, the defendant testified he registered as a sex offender upon his release from prison and he thought he did not have to register again until his birthday the following year. (*Coley*, *supra*, 55 Cal.4th at p. 534.) A jury convicted him of failing to update his sex offender registration within five working days of his birthday, but acquitted him of failing to register upon his arrival in the jurisdiction. (*Id.* at p. 535.) In sentencing the defendant to 25 years to life under the Three Strikes law, the trial court declined to strike the defendant's strike priors and rejected his contention the punishment was cruel and unusual after finding, based on its review of the record, that the defendant consistently had refused to register as a sex offender. (*Coley*, *supra*, 55 Cal.4th at pp. 535-536.) In so ruling, the trial court reviewed the defendant's lengthy and serious prior criminal record, noted the current offense occurred only a few months after the defendant's release on parole, stated it did not believe his testimony that he registered when he was released from prison, and found that the only time the defendant ever made an effort to register was either when he was in prison for a parole violation or was taken to register by his parole agent. (*Ibid.*)

Our Supreme Court agreed that the defendant's conduct, as found by the trial court, "demonstrated that, despite the significant punishment [defendant] had incurred as a result of his prior serious offenses, he was still intentionally unwilling to comply with an important legal obligation, and thus his triggering criminal conduct bore both a

rational and substantial relationship to the antirecidivist purposes of the Three Strikes law." (*Coley*, *supra*, 55 Cal.4th at p. 531.) The Court explained: "Given that relationship and the extremely serious and heinous nature of petitioner's prior criminal history, we conclude that, under *Ewing*, *supra*, 538 U.S. 11, the imposition of a 25-year-to-life sentence does not constitute cruel and unusual punishment under the circumstances of this case." (*Coley*, *supra*, 55 Cal.4th at p. 531.)

In reaching this conclusion, the Court recognized that both a California appellate court in *People v. Carmony* (2005) 127 Cal.App.4th 1066 (*Carmony II*),[8] and the Ninth Circuit in *Gonzalez v. Duncan* (9th Cir. 2008) 551 F.3d 875,[9] had concluded that a 25-year-to-life sentence under the Three Strikes law "is unconstitutional as applied to a

---

[8] In *Carmony II*, the Third District Court of Appeal concluded a Three Strikes sentence of 25 years to life violated both state and federal constitutional norms where the defendant failed to register within five days of his birthday but had not moved since his last registration the month before and evidently had turned his life around. (*Carmony II*, *supra*, 127 Cal.App.4th at pp. 1074-1089.) In reaching this conclusion, the appellate court noted the defendant had committed no further sex offenses since his original 1983 sexual offense, had committed no serious or violent offenses since 1992, had "no tendency to commit additional offenses that pose a threat to public safety," and "was acting in a responsible manner" in that he had married, participated in alcohol classes, was employed, and did not pose "a serious risk of harm to the public justifying a life sentence." (*Carmony II, supra,* 127 Cal.App.4th at pp. 1073, 1080-1081, 1087-1088.) The court noted that, "because defendant did not evade or intend to evade law enforcement officers, his offense was the most technical and harmless violation of the registration law we have seen." (*Id.* at p. 1078.)

[9] In *Gonzalez*, the defendant failed to update his sex offender registration within five working days of his birthday but had not moved, and received a sentence of 28 years to life, based on two prior strikes and three prior prison terms. (*Gonzalez, supra,* 551 F.3d at pp. 878-879.) The Ninth Circuit concluded that despite Gonzalez's criminal history, there was "no evidence that, as of 2001 [i.e., at the time of his current offense], Gonzalez was a recidivist" and that "Gonzalez's present offense does not reveal any propensity to recidivate." (*Id.* at pp. 886-887.) On that basis, the court concluded his sentence was grossly disproportionate to his offense and therefore violated the Eighth Amendment. (*Id.* at p. 877.)

defendant who has provided law enforcement authorities with accurate information regarding his or her current address and has generally demonstrated a good faith effort to comply with the sex offender registration requirements but who, through a negligent oversight, has failed to affirmatively confirm the continued accuracy of his or her existing registration information by updating the information each year within five working days of his or her birthday." (*Coley*, *supra*, 55 Cal.4th at p. 551; see also *Id.* at pp. 544-550.)

The Court also recognized other decisions in which such a sentence was found to be constitutional, namely *People v. Nichols* (2009) 176 Cal.App.4th 428[10] and *Crosby v. Schwartz* (9th Cir. 2012) 678 F.3d 784.[11] (*Coley*, *supra*, 55 Cal.4th at pp. 550-551.) The Court explained those decisions as ones in which the appellate court concluded the sentence was constitutional "as applied to a defendant whose current address is unknown to law enforcement authorities and who has failed to comply with a crucial aspect of the sex offender registration requirements – such as a defendant's failure to register a current address upon arrival in a jurisdiction." (*Id.* at p. 551.)

---

[10] In *Nichols*, the Third District Court of Appeal upheld under both the federal and state constitutions the defendant's 25-year-to-life sentence for failing to register a new address within five working days of a change of residence. (*Nichols*, *supra*, 176 Cal.App.4th at p. 435-437.) In doing so, the court distinguished *Carmony II* on the basis that the defendant's failure to register thwarted the fundamental purpose of the registration law, i.e. to require the offender to identify his or her present address to law enforcement authorities so he or she is readily available for police surveillance. (*Nichols*, *supra*, 176 Cal.App.4th at p. 437.) The court concluded the defendant's sentence was not grossly disproportionate to his offense where his whereabouts were unknown for over eight months and he had a history of serious prior convictions and sustained criminality. (*Ibid.*)

[11] In *Crosby*, the Ninth Circuit rejected a habeas corpus petitioner's contention that his 26-years-to-life Three Strikes sentence violated the Eighth Amendment where the petitioner had been convicted of both failing to annually update his sex offender registration within five days of his birthday and failing to register within five days of a change of address, and had not committed "a mere technical offense" but rather had intentionally "impeded the police's ability to find him for surveillance." (*Crosby*, *supra*, 678 F.3d at p. 794.)

The Court concluded the circumstances surrounding the defendant's triggering offense distinguished his case from *Carmony II* and *Gonzalez*, and were more comparable to *Nichols* and *Crosby*. (*Coley*, *supra*, 55 Cal.4th at p. 552.) In reaching this conclusion, the Court noted that, when determining whether a lengthy sentence imposed under a recidivist sentencing statute is unconstitutionally excessive or disproportionate, courts look to the actual conduct the defendant engaged in that resulted in the sentence. (*Coley*, *supra*, 55 Cal.4th at p. 553.)

The Court acknowledged that the triggering offense at issue, i.e. the failure to update one's sex offender registration within five working days of one's birthday, can be committed under a wide range of circumstances. (*Ibid.*) The Court explained: "Some defendants—as in *Carmony II* and *Gonzalez*—who have properly registered their current address and whose overall conduct demonstrates a general good faith effort to comply with the sex offender registration requirements may commit this offense through a mere negligent oversight that does not adversely impact the fundamental purpose of the sex offender registration regime. Other defendants, however, may violate this statutory provision by intentionally failing to update their sex offender registration within five working days of their birthday as part of a more general course of conduct that demonstrates a deliberate general unwillingness to comply with the sex offender registration requirements. In analyzing a cruel and unusual punishment challenge to a sentence imposed upon a defendant convicted of this offense, a court may not simply look to the nature of the offense in the abstract, but must take into consideration all of the relevant specific circumstances under which the offense actually was committed." (*Coley*, *supra*, 55 Cal.4th at p. 553.) When doing so, the appellate court must take into account a trial court's factual findings regarding the circumstances of the triggering offense. (*Id.* at p. 560.)

The Court concluded the defendant's conduct fell under the second category of cases, as defendant "deliberately failed to register as a sex offender even though he knew

21.

he had an obligation to do so," thereby demonstrating that, "notwithstanding the significant punishment that he had incurred as a result of his prior serious and violent felony convictions," he "was still intentionally unwilling to comply with important legal requirements prescribed by the state's criminal laws[,]" and, consequently, his "current criminal conduct and conviction clearly bore a rational and substantial relationship to the antirecidivist purposes of the Three Strikes law." (*Coley*, *supra*, 55 Cal.4th at pp. 561-562.) The Court further found that, "[i]n light of the particularly heinous nature of [defendant]'s prior criminal activity[,]" his "present offense—reflecting a deliberate decision by [defendant] to refuse to comply with an important legal obligation—may properly be viewed as an indicator of potentially significant future dangerousness." (*Id.* at p. 562.) Based on the circumstances of the defendant's current crime and his very serious criminal history, the Court concluded the 25-year-to-life sentence did not constitute cruel and unusual punishment in violation of the Eighth Amendment. (*Coley*, *supra*, 55 Cal.4th at p. 562.)

Crawford contends that he falls within the ambit of those cases which found the defendant's 25-to-life sentence for failing to register constituted cruel and unusual punishment, such as *Carmony II* and *Gonzalez.* He asserts his conduct "closely parallels" the offenses committed by the defendants in those cases, as there was no question about his whereabouts and he did not attempt to evade law enforcement. He also asserts no rational relationship existed between his omission and his recidivism, as his sex offenses were 20 years old, committed against the same victim, and he has not committed another serious or violent felony. The People counter that the circumstances of this case are more comparable to *Coley*, *Nichols* and *Crosby*, as his failure to register as a transient within 30 days of his prior registration was not a technical violation of the sex offender registration requirements and, despite having served multiple prison sentences for failing to register as a sex offender, he remained unwilling to comply with his registration

requirements. The People assert Crawford's behavior showed he did not make a good faith effort to comply with the sex offender registration requirements.

We agree with the People. While Crawford was in contact with his parole agent and had a GPS monitor, his trial testimony evidences an intent to evade the registration requirements, as it was comprised of inconsistent statements as to why he failed to reregister. First, he said he did not reregister because his mother was dying and he was stressed out. Next, he claimed he tried to register at the Hanford Police Department, but was told the motel where he was staying was out of their jurisdiction and he should register with the sheriff's department. Crawford said he registered at the sheriff's department on a Tuesday in November with an unknown brunette female. Finally, Crawford testified that he did not know that he had to return in 30 days to reregister, and made various excuses for his lack of knowledge, such as that he did not read the forms he signed, he could not read, and he needed glasses to read the words.

In addition to Crawford's varying versions of events, this was not the first time he failed to comply with the registration requirements. He has been convicted twice of failing to register and served prison sentences after each conviction. As the trial court noted in declining to strike one of the strikes, Crawford was on notice of the severe consequences and gravity of his failures to register, yet he continued to fail to comply. Despite knowing the severe consequences of failing to register, Crawford continued to evade his responsibilities and could comply only with his parole agent's assistance. Crawford was 44 years old when he failed to register in the instant case, was unemployed, had not held a job since before his 1991 convictions, and did not have discernible prospects.

In considering the harshness of the penalty, we take into consideration that Crawford is a repeat offender whom the Legislature may punish more severely than it punishes a first-time offender. (*Ewing*, *supra*, 538 U.S. at pp. 24-26.) On this record, Crawford's decision to disregard the registration requirement "may properly be viewed as

23.

an indicator of potentially significant future dangerousness." (*Coley, supra,* 55 Cal.4th at p. 562.)

In sum, Crawford's sentence is not "so disproportionate to the crime that it 'shocks the conscience' in light of [Crawford's] history and the seriousness of his offenses." (*Nichols, supra,* 176 Cal.App.4th at p. 435.) Nor can we find the sentence grossly disproportionate "by weighing the crime and defendant's sentence 'in light of the harm caused *or threatened to ... society* [.]'" (*Nichols, supra,* at p. 435, emphasis added.) While Crawford's sentence is harsh, it does not violate either the state or federal constitutional prohibitions on cruel and unusual punishment.

*Pre-Sentence Custody Credits*

The trial court awarded presentence custody credit according to the formula mandated by section 4019 as it read during the period Crawford failed to register, between October 29 and December 13, 2010: two days of conduct credit for every four days actually served, or, stated differently, a total of six days of credit for each four days of custody. (Former § 4019, subd. (f).) Crawford served 120 days before sentencing, and the court awarded 60 days of conduct credit, for a total of 180 days of credit.

After Crawford's December 13, 2010 arrest for failure to register, the Legislature amended section 4019 to provide two days of conduct credit for each two days actually served, or stated differently, a total of four days of credit for each two days in custody. (§ 4019, subd. (f).) The Legislature specified that the amendment "shall apply prospectively and shall apply to prisoners who are confined . . . for a crime committed on or after October 1, 2011." (§ 4019, subd. (h).) The Legislature also provided that "[a]ny days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law." (*Ibid.*)

The People argue that the first of these sentences means the old formula applies to all presentence custody served for crimes that, like Crawford's, were committed before October 1, 2011. Crawford argues the second sentence implies that the new formula

24.

applies to all presentence time served on or after October 1, 2011, even if the crimes were committed before then. Crawford was sentenced on February 15, 2012, so he served a portion of his presentence time on and after October 1, 2011. He asks us to order a recalculation of his credits for that portion.

As Crawford recognizes, we addressed the same argument Crawford makes here in *People v. Ellis* (2012) 207 Cal.App.4th 1546 (*Ellis*). We said: "In our view, the Legislature's clear intent was to have the enhanced rate apply *only* to those defendants who committed their crimes on or after October 1, 2011. [Citation.] The second sentence does not extend the enhanced rate to any other group, but merely specifies the rate at which all others are to earn conduct credits." (*Id.* at p. 1553.) In so holding, we disagreed with a Sixth District Court of Appeal decision in which the court concluded the second sentence was "meaningless unless the liberalized credit scheme applies to crimes committed before the stated date."[12] (*Ibid.*)

While Crawford argues *Ellis* was wrongly decided because the analysis is flawed, we adhere to *Ellis*. The first sentence of subdivision (h) of section 4019 admits of only one interpretation: The additional credits apply *prospectively* to *crimes committed* on or after October 1, 2011. This is not consistent with an interpretation of the second sentence according to which the new scheme also applies retrospectively to crimes committed before October 1, 2011, if the prisoner remains in presentence custody after that date. The second sentence can be interpreted instead as making the simple point that time not subject to the new law is subject to the old law. This interpretation may render the second sentence unnecessary (because it states the obvious), but that result is preferable

---

[12] Our Supreme Court granted review in the Sixth District case, *People v. Olague* (May 7, 2012, H036888), on August 8, 2012. On March 20, 2013, the Court dismissed review in light of *People v. Brown* (2012) 54 Cal.4th 314, which held that there was no retroactive application of an earlier amendment to section 4019.

25.

to an interpretation according to which the two sentences contradict each other. It also is preferable to imputing to the Legislature an intent to create by implication a complex scheme under which some prisoners would earn credits at two different rates. We conclude that the trial court calculated Crawford's credits correctly.

**DISPOSITION**

The judgment is affirmed.

_____
Gomes, Acting P.J.

WE CONCUR:


_____
Peña, J.


_____
Oakley, J.*

---

* Judge of the Superior Court of Madera County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.